### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| MICHELLE LOVE, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BUILT BRANDS, LLC d/b/a BUILT BAR,<br><br>Serve registered agent at:<br>Jacob Bryant or Manager<br>615 North 150 East<br>American Fork, Utah 84003<br><br>Defendant. | Case No.:<br><br>**JURY TRIAL DEMANDED** |

### CLASS ACTION COMPLAINT

COMES NOW Plaintiff Michelle Love, individually, and on behalf of all others similarly situated, and for her Class Action Complaint against Defendant Built Brands, LLC d/b/a Built Bar, states:

### BACKGROUND, PARTIES, JURISDICTION AND VENUE

1. Plaintiff Michelle Love ("Love") brings this case to protect the privacy rights of herself and a class of similarly situated people who were sent text messages on their phones by Defendant Built Brands, LLC d/b/a Built Bar ("Built Bar"). Built Bar repeatedly sent text messages to Love and the putative class members after Love and the putative class members expressly requested that Built Bar stop calling them.

2. In the early 1990s, Congress enacted the Telephone Consumer Protection Act ("TCPA") to protect consumers' privacy rights, namely, the right to be left alone from

unwanted telemarketing calls. A leading sponsor of the TCPA described unwanted telemarketing calls as "the scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

3. The TCPA affords special protections for people who registered their cell phone numbers on the National Do Not Call Registry and who request that they be placed on a company's internal do not call list. Specifically, the TCPA provides that each person who receives more than one call on their cell phone after requesting to be placed on the company's internal do not call list is entitled to recover a penalty of $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated.

4. In 2022 alone, approximately 32.6 billion robocalls were placed in the United States. RobocallIndex.com, YouMail Robocall Index, https://robocallindex.com/history/time (last visited September 15, 2022). The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

5. Love is an individual who resides in and is a citizen of the State of Minnesota.

6. Love brings this action on behalf of herself and all others similarly situated.

7. Built Bar is a Utah Limited Liability Company who has been in good standing to transact business at all times relevant to this Complaint.

8. Built Bar transacts business in Minnesota and throughout the United States.

9. Jurisdiction is proper in this Court under 28 U.S.C. § 1331 as this case presents a federal question under the TCPA.

10. This Court has personal jurisdiction over Built Bar because Built Bar solicits business in the State of Minnesota, conducts business in the State of Minnesota, and Built Bar otherwise has sufficient minimum contacts with the State of Minnesota, and such contacts are continuous and systematic.

11. Venue is proper in this Court under 28 U.S.C. § 1391 as a substantial part of the events giving rise to Love's claims occurred within this judicial district.

## BUILT BAR'S MARKETING TACTICS

12. Built Bar is in the business of selling protein bars. Built Bar describes its product as being "a standout among protein bars."

13. Built Bar markets its protein bar products, in part, through sending text message advertisements to consumers' cell phones.

14. Love is the owner of a cell phone. Her phone number is 651-XXX-2819.

15. Love's phone is a residential line that is used for personal purposes.

16. Love's cell phone is held in her personal name.

17. On or about November 13, 2020, Love received a text message from Built Bar that marketed Built Bar's products.

18. On or about November 13, 2020, Love replied to the text message, "Stop."

19. In response, Build Bar replied to Love, "You are now opted out of Build Brands, LLC SMS Alerts. No more messages will be sent. Reply HELP for help. Report spam to support@builtbar.com."

20. Built Bar did not fulfill its promise of no longer sending text messages to Love.

21. Instead, Built Bar sent Love at least fifteen text messages after promising to stop sending her text messages.

22. On May 10, 2022, after Love texted "stop" to Built Bar, and after Built Bar confirmed it would no longer send Love text messages, Built Bar sent Love the following text message:



23. On May 17, 2022 and May 21, 2022, Built Bar sent Love the following text messages:



24. On or May 28, 2022, Built Bar sent Love the following text message:



25.     On June 16, 2022, Built Bar sent Love an image of one of its "Mud Pie Built Bar" products and the following text message:

>   Built Bar: Mud Pie Built Bars and Built Puffs are here! Order now and get one of our highest rated flavors ever!
>
>   https://klv8.io/0/4zjkbn
>
>   Text STOP to opt-out

26.     On June 23, 2022, Built Bar sent Love the following text message:

>   Built Bar: The wait is over, Coconut Brownie Chunk Puffs have arrived! Order now before they disappear!
>
>   https://klv8.io/0/4DCbQx
>
>   Text STOP to opt-out

27.     On July 7, 2022, Built Bar sent Love the following text message:

>   Built Bar: Raspberry Lemonade Built Bar available now! Real raspberries, lemon coating, great macros! Order now!
>
>   https://klv8.io/0/4LPp4N
>   Text STOP to opt-out

28.     On July 12, 2022, Built Bar sent Love the following text message:

>   Built Bar: Hi Michelle, our new Orange Dreamsicle Built Puff is here! PLUS get 10% off site-wide!
>
>   Order Now!
>   https://klv8.io/0/4RreYP
>
>   Text STOP to opt-out

29.     On July 15, 2022, Built Bar sent Love the following text message:

>   Built Bar: Hi Michelle, get $10 off any purchase today only! Use code: KV62NFKN

Order Now!
https://klv8.io/0/4Tnx3g

Text STOP to opt-out

30. On July 19, 2022, Built Bar sent Love the following text message:

Built Bar: It's always time for S'mores! Get the new S'mores Bar, YES!! Limited time only!

Order Now
https://klv8.io/0/4V7y6C

Text STOP to opt-out

31. On July 26, 2022, Built Bar sent Love the following text message:

Built Bar: Cookie dough chunk is back for a limited time! Guilt-free 15g protein and only 160 calories

Order Now
https://klv8.io/0/4ZtyyR
Text STOP to opt-out

32. On July 28, 2022, Built Bar sent Love the following text message:

Built Bar: 48hr Factory Seconds Sale starts now!
Boxes start at $19.95 –
Featuring Built's best flavors

Order Now
https://klv8.io/0/52RGgeg
Text STOP to opt-out

33. On August 26, 2022, Built Bar sent Love the following text message:

Built Bar: SMS early access to Factory Seconds Sale starts NOW! Get Cookie Dough Chunk Puff for $19.95!

Shop Now:
https://klv8.io/0/5k3knNh
Text STOP to opt-out

7

34. On September 8, 2022, Built Bar sent Love the following text message:

   Built Bar: Cool off the end of summer with a Free Travel Cooler + Bonus Bar with every order $65+

   Shop now:
   https://klv8.io/05uXCNc
   Text STOP to opt-out

35. On September 9, 2022, Built Bar sent Love the following text message:

   Built Bar: Secret 10% off sale for SMS subscribers only! More special offers await! Use Code SMSONLY

   Shop now:
   https://klv8.io/0/5vWLes
   Text STOP to opt-out

36. Each of the text messages were sent to Love from short code 36073. On information and belief, this short code is owned or used by Built Bar for the purposes of marketing its products via text message.

37. Built Bar's text messaging policy provides:

   "You may opt-out of the Service at any time. Text the single keyword command STOP to 36073 . . . to cancel. You'll receive a one-time opt-out confirmation text message. No further messages will be sent to your mobile device . . . ."

38. Built Bar's conduct violated the privacy rights of Love and the putative class members, as they were subjected to annoying and harassing calls. Built Bar's calls intruded upon the rights of Love and the putative class members to be free from invasion of their interest in seclusion.

39. Built Bar's conduct caused Love and the putative class members to waste time addressing and/or otherwise responding to the unwanted calls.

40. On information and belief, Built Bar sent text messages to Love and the

putative class members for the purpose of selling its products and services.

## Class Allegations

41.     Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), Love brings this lawsuit as a class action on behalf of himself and all others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation.

42.     Love seeks to represent the following class:

> All persons in the United States who from four years prior to the filing of this action through class certification to whom: (1) Built Bar sent text messages marketing its products, (2) Built Bar sent more than one text message to the person in a twelve-month period, (3) after the person requested that Built Bar stop sending them text messages.

43.     Love reserves the right to add administrative subclasses, or to amend the definition of the proposed class, during the lawsuit proceedings.

44.     The members of the proposed classes are so numerous that joinder of all members is impracticable. Love reasonably believes that hundreds or thousands of people have been harmed by Built Bar's actions. The phone numbers of the members of the proposed class are readily identifiable through records available to Built Bar or those acting on its behalf.

45.     Most members of the proposed class have suffered damages in an amount such that it would make filing separate lawsuits by individual members economically infeasible.

46. On information and belief, Built Bar has texted and continues to text people who have requested that Built Bar stop calling them, i.e., to be placed on Built Bar's internal do not call list. It is reasonable to expect that Built Bar will continue to send such text messages absent this lawsuit.

47. Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to:

   a. Whether Built Bar sent text messages to Love and the putative class members after they requested that Built Bar no longer send them text messages;

   b. Whether Built Bar's conduct violates 47 U.S.C. § 227(c);

   c. Whether Built Bar's conduct violates the rules and regulations implementing the TCPA; and,

   d. Whether Love and the putative class members are entitled to increased damages for each violation based on the willfulness of Built Bar's conduct.

48. Love's claims are typical of the claims of the proposed class members because her claims arise from the same practice that gives rise to the claims of the members of the proposed class and is based on the same legal theories.

49. Love and her counsel will fairly and adequately protect the interests of the members of the proposed class. Love's interests do not conflict with the interests of the proposed class she seeks to represent. Love has retained lawyers who are competent and experienced in class action litigation, TCPA litigation and consumer law.

50. Love's counsel will vigorously litigate this case as a class action, and Love and her counsel are aware of their responsibilities to the putative members of the class and will discharge those duties.

51. A class action is superior to all individual lawsuits for this controversy. Joinder of all proposed members of the proposed class in one action is impracticable if not impossible and prosecuting hundreds or thousands of individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most, members of the proposed class, a class action is the only procedural mechanism that will allow recovery. Even if members of the proposed class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts. Individual litigation could also result in inconsistent adjudications.

52. In contrast, a class action is superior in that it will benefit the court and litigating parties through efficiency, economy of scale and unitary adjudication resulting from supervision of the litigation by a single court.

53. Questions of law and fact, particularly the propriety of sending text messages to persons who requested that Built Bar no longer text them, i.e., to place them on Built Bar's internal do not call list, predominate over questions affecting only individual members.

54. Built Bar has acted or refused to act on grounds that apply generally to the class, making final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole.

**Count I - Violations of the Telephone Consumer Protection Act ("TCPA"),
47 U.S.C. § 227 *et seq.***

55.     Love incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

56.     The TCPA provides that "a person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may recover $500 for each violation, and up to $1,500 for each violation, if the violation is determined to be willful. *See* 47 U.S.C. §§ 227(c)(5).

57.     The regulations prescribed under Section 227(c) require companies like Built Bar, who engage in telemarketing to institute "procedures for maintaining a list of persons who request not to receive telemarketing calls on or behalf of that person or entity." *See* 47 C.F.R. § 64.1200(d).

58.     These procedures must meet several minimum standards, including, but not limited to:

> **(1) *Written policy.*** Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> **(2) *Training of personnel engaged in telemarketing.*** Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> **(3) *Recording, disclosure of do-not-call requests.*** If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone

number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

**(4)** *Identification of sellers and telemarketers.* A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

**(5)** *Affiliated persons or entities.* In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

**(6)** *Maintenance of do-not-call lists.* A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

*See* 47 C.F.R. § 64.1200(d)(1)-(6).

59. Built Bar failed to maintain and/or implement these minimum standards by repeatedly sending text messages to Love and the putative class members after Love and the putative class members requested that Built Bar stop sending them text messages.

60. In addition, the TCPA allows the Court to enjoin Built Bar's violations of the TCPA's regulations prohibiting calls to phone numbers that should have been placed on

13

Built Bar's internal do not call list. *See* 47 U.S.C. §§ 227(c)(5)(A).

61. By sending text messages to the phones of Love and the putative class members after their numbers should have been placed on Built Bar's internal do not call list, Built Bar violated the TCPA, including, but not limited to, 47 U.S.C. § 227(c) and the TCPA's corresponding regulations.

62. Built Bar knew or should have known that Love and the putative class members did not wish to receive text messages as such persons expressly advised Built Bar that they did not wish to receive text messages from Built Bar.

63. Love and the putative class members are entitled to damages of $500.00 per violation for each text message sent by Built Bar in violation of the TCPA and up to $1,500.00 per violation if the Court finds that Built Bar willfully violated the TCPA.

## Demand for Judgment

WHEREFORE Plaintiff Michelle Love, individually, and on behalf of all others similarly situated, requests the Court grant the following relief:

a. Enter an order against Defendant Built Brands, LLC d/b/a Built Bar pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying this action as a class action and appointing Love as the class representative;

b. Enter an order appointing Butsch Roberts & Associates LLC and Snodgrass Law LLC as counsel for the class;

c. Enter judgment in favor of Love and the putative class for all damages available under the TCPA, including statutory damages of $500 per violation of the TCPA,

or up to $1,500 per violation of the TCPA if Built Bar willfully violated the TCPA;

    d.    Enter a judgment in favor of Love and the putative class that enjoins Built Bar from violating the TCPA's regulations prohibiting Built Bar from sending text messages to persons who have requested that Built Bar stop texting them;

    e.    Award Love and the class all expenses of this action, and require that Built Bar pay the costs and expenses of class notice and administration; and,

    f.    Award Love and the class such further and other relief the Court deems just and appropriate.

## **DEMAND FOR JURY TRIAL**

Please take notice that Plaintiff Michelle Love demands a jury trial in this case.

SNODGRASS LAW LLC

By: T. Joseph Snodgrass
T. Joseph Snodgrass (MN 231071)
100 S. Fifth Street, Suite 800
Minneapolis, MN 55402
(612) 448-2600
jsnodgrass@snodgrass-law.com

Christopher E. Roberts (*pro hac* to be filed)
BUTSCH ROBERTS & ASSOCIATES LLC
231 S. Bemiston Avenue, Suite 260
Clayton, MO 63105
(314) 863-5700
CRoberts@butschroberts.com